John Williams, on behalf of Mr. Spak, this Court on two occasions has said in malicious prosecution cases that the necessary predicate is a conclusive termination of the underlying criminal proceeding. And the Connecticut Supreme Court, in the Cicillo case, found that there is a difference between a regular termination, which occurs at the moment a nulla prosequi is entered, and what, for practical purposes in that case, the Cicillo case, was a conclusive termination, which indeed occurs 13 months later. Cicillo's, the Court recalls, involves a State statute which provides that when a police After the case is, quote, unquote, dismissed, he can seek reimbursement of his legal expenses from his department. He cannot do that when a case is nullied. But in Cicillo, the Court held, under the statute, that when 13 months passes and the erasure kicks in, then the level of termination is increased to what the Cicillo Court called a dismissal. And at that point, he can get compensation. And we're saying, we're asking this Court to hold in a case of first impression that the same applies when the malicious prosecution plaintiff is a civilian rather than a police officer, that there is a distinction between the favorable termination, which occurs under Roberts and under C v. Gosling, at the moment the nolly is entered, and the conclusive favorable termination that occurs 13 months later after the records are erased. Well, the Connecticut rule is that it be conclusive, that it be the file of the nolly is enough, right? That's the Connecticut rule under Roberts. The precise issue presented by this case has never been decided by the Connecticut courts. C v. Gosling was decided in 1946. The erasure statute was not enacted until 63. Leaving aside, let me go outside the erasure statute and just look at the nolly question. A nolly is basically a vacator of an indictment. Right. It doesn't preclude the prosecution from filing another indictment, does it? And if it files another indictment, then in that sense, the case was not conclusive determined by the nolly. Right. But that particular prosecution that is signaled by the first indictment was conclusively determined. Correct. It's gone. It's gone. That indictment's gone. Now, you could look at it two ways. You could look at it either as a continuation of a prosecution, albeit with a new indictment, or you could look at it as a new prosecution with a new indictment. And if it's a new prosecution with a new indictment and a nolly is sufficient as a favorable determination, that's the end of the matter, right? In other words, if an indictment 1 is nollied and then later on the prosecution decides to bring another prosecution, file another indictment, that first nolly would be enough to support a malicious prosecution claim, right? In other words, it was a favorable termination. Well, that precise question has never come up. Oh, it's speculative to say that. But Cicillo drew a distinction between the prearranged, the nolly that occurs at the moment it occurs and the effect of that nolly 13 months later. And it seems to me that that distinction dovetails exactly with the concept that this case is a favorable termination. And I think that's the basis of the case that I've cited. Do you agree that the prosecution accrues upon the favorable determination? You can't bring a case until there is a favorable termination? Not bring a case until there's a favorable termination. Right, right. And it seems to me that isn't there a Supreme Court case that says that accrual is a matter of Federal law, not State law? Well, there's no doubt about that. Yeah, okay. So if it's a matter of Federal law, then it's — isn't that a matter — doesn't that question of Federal common law, what the Federal common law would be as to whether a nolly is sufficient? And doesn't that require going back to the common law as opposed to State law? Right. And certainly all of the Federal courts hold that in malicious prosecution cases, determining what constitutes the favorable termination involves looking at State law, which this Court did in Roberts v. Babkowitz. It seems to me there's some confusion because you're looking at malicious prosecution under State law, but accrual is a matter of Federal law. And if — if the last element of the malicious prosecution claim is looked at in that way, it's State law, but if it's looked at as an accrual point, then it's Federal law. And — and that's — that's — that seems to be a little tension. I — I agree. I agree, Judge Walker. There's no question that accrual is an issue of Federal law. The issue of what constitutes a favorable termination is not an accrual question. That's simply one of the necessary elements to have a cause of action in the first place. But it is the final action upon which the action accrues. Well, that's the question that is before this Court, because that precise issue has never before been decided in this Court, which is the only court that's going to put a Federal — take a Federal look at Connecticut law. And it has never been decided in Connecticut. They don't have — have never had occasion to look at the accrual issue under either State law or — Now, let's assume that Connecticut has a rule that says filing a nollie is sufficient. If New York has a rule that says filing a nollie is sufficient, provided it's — it's a nollie on the merits, as opposed to for some other reason. Understood. But that, again, is not accrual. Then you — then you end up with the Second Circuit having a different rule for Connecticut than it would for New York. Which you do. Well, but if it's a matter of Federal law, it should be Federal. Shouldn't it be a single rule? Well, again, Judge Walker, as you pointed out, we're, to some extent, I think, mixing up a necessary element versus accrual. The nollie — the favorable termination is a necessary element. Nollie is a necessary — is a favorable termination. But when does it accrue? Does it accrue at that moment, or does it accrue after it matures into something more conclusive, as Cicillo pointed out, which is 13 months later? And that's the issue that no State court has decided, nor has this Court decided. It really is a case of first impression. And I don't see why there should be a difference in the way you treat the — you decide the moment at which a police officer who's been acquitted gets to go ahead and get compensation and when a civilian does. Why should a civilian have a shot at it earlier? It seems to me that consistency would say the 13 months after the nollie is the point of accrual, although the nollie is the favorable termination. Roberts. Okay. Thank you. May it please the Court. I'm James Talberg for the Defendant Appellee Officer Shane Phillips. The District Court's decision should be affirmed because it is a well-reasoned and accurate statement of the law. It'd be difficult to add much to the thoughtful and concise decision of Judge Meyer, but I'll try. First, to respond to the argument you just heard, Judge Walker, I think you hit the nail on the head. Accrual is a question of federal law, and that was decided in Wallace v. Cato. So there's really no reason to look at this Cicillo decision from the Connecticut Supreme Court, which is a 1987 decision that's wholly distinguishable because that was simply an indemnification claim. It wasn't even a malicious prosecution claim. Has no bearing here. It also, if you look closer, if you were going to look at Connecticut law, you would look at Weiner, a 2008 Connecticut Supreme Court decision in which they, the Supreme Court, held that the statute on which the plaintiff appellant relies here, the 54-142AC1, governs the disposition of records, not the disposition of criminal charges. As the district court here properly concluded, it is simply a record-keeping statute, administrative and intent rather than substantive. That's directly from the district court recognized that accrual was a matter of federal law? Absolutely. Citing Wallace v. Cato. Okay. Let me see. I've got the opinion here. Let me see that. That's a footnote. Well, footnote one, they cite to Wallace v. Cato. Yes. And page, this is at Joint Appendix 164, the length of the statutes. Well, that's a reference to the three-year statute of limitations. But I'm certain that the district court properly perceived that, Your Honor. The second reason why the district court should be affirmed is that there are no reported decisions in the District of Connecticut or the Second Circuit in which a court has accepted the argument that is pressed in this case by the plaintiff appellant. We do have, from the District of Connecticut, our Chief Judge, Janet Hall, has held that the entry of a nollie, that date, the entry date, is the date on which a malicious prosecution claim under 42 U.S.C. 1983 accrues. That was in Woodbury v. Johnson, which was also relied on by the district court in this case, a 2014 decision in which it was a 12b-6 dismissal, not binding, but certainly persuasive. Third, setting aside the law, if you just look at this factually, there is no evidence or no compelling reason, no reason at all, really, to adopt the rule that's suggested here by the plaintiff appellant. This plaintiff had more than three years to file this action. Under the applicable statute of limitations, 52-577, a plaintiff has three years to file a malicious prosecution claim. The arrest by warrant was June 24, 2010. The suit wasn't filed until three years, four months later, and you will not find anywhere in the record an explanation or an excuse as to why that is so. Rather than adopt some new rule, there would have been a concept familiar to this district, equitable tolling. It's a recognized legal doctrine in the Second Circuit that may have been argued, but for that to apply, there would have been a need for rare and exceptional circumstances. You haven't heard any argument about rare or exceptional circumstances. So there's really factually no good reason to adopt this statute of limitations, which would be beyond even three years. As the district court noted, the other problem is if you adopt this rule, what you're going to have is plaintiffs with worthy malicious prosecution claims that are not going to be ripe until they wait an extra 13 months after the nolley under this erasure statute. So that would just further elongate it, and that would lead to mayhem. Exactly why? Why mayhem? Well, you would, right now a plaintiff needs a favorable termination to file a malicious prosecution claim. So they need to get a nolley. Once they get the nolley, their claim is ripe, they can file the claim. They would have to wait an additional 13 months beyond that. It just seems like it would not lead to speedy justice. It would further elongate things. And they could then wait. Certainly nothing — certainly that rule would not be prejudicial to the plaintiffs. Well, it would be prejudicial to the defendant. I understand. You'd have — instead of a three-year statute of limitations, you could have a four-year and one-month statute of limitations. Right. That's unheard of. Other — in other circuits, you have as low as one year, you have two years in some. And we have three. How — why would the plaintiff be fully charged with the knowledge, as of the date of the nolley, that there had been a success — a complete, successful, and permanent termination? Because the case is closed, they're released from custody if they were being held, they're no longer under the jurisdiction. The indictment is vacated. Yeah, they're free to go. So if they feel they were wrongly charged, they can go to court and file a malicious prosecution action. And what if the response is — I don't want to use a loaded word, retaliatory — but it would seem to me that between the time of the nolley and the expungement, the State would still be — would still have some freedom to commence an action against this person, no? Maybe not. There is, but — There's always a — as long as the statute of limitations exists, there's an opportunity — under the criminal provision, there's an — the State can always file another case after a nolley's been entered. Yes. And it would have to be a new case. It's a new filing under our practice. Yeah. I guess that's the distinction, because traditionally the criminal law, Federal criminal law, to the extent that there's a common law, Federal law in this area, has said that a nolley is sufficient to be a favorable determination, notwithstanding the fact that there can be a second indictment. Rarely — rarely, I don't think — you know, most people have never seen a second indictment after a nolley's been filed, but it could happen. I think you're correct, Judge Walker. It's rare, and in any event, that case is closed, that criminal case, because there has been a disposition. Finally, we had an alternate ground — It's a disposition without prejudice, in effect. Yes, that's correct. I agree. And then finally, we do have alternate grounds. I mean, it would be futile for the Court to remand this, because we did press in our brief alternate grounds to affirm. It wasn't an arrest based on speedy information. It was an arrest by warrant, which carries with it the presumption of probable cause. The officer here is entitled to qualified immunity, or at the very least, probable — qualified immunity for arguable probable cause. And so if the Court were to remand this back below, Judge Meyer at the District Court didn't reach our alternate grounds, the qualified immunity analysis or the probable cause, because he went straight to the statute of limitations. I would argue here there's no need to get to it either, because you just do the simple math, and this claim was barred by the statute of limitations. So unless there are any questions, I won't belabor what should be an easy decision for this Court. There is no basis in fact or in law to reverse the District Court's decision granting summary judgment to Officer Shane Phillips. And for all these reasons, we ask that you please affirm the District Court judgment. Thank you. Mr. Williams? I've spent a lot of time in the criminal courts in Connecticut over the last half-century, and it's been my observation that almost all defendants understand when they get a nollie that they are — that there's a string attached to them for the next 13 months. That's why a lot of them object to getting nollies. In fact, it's not at all uncommon for judges at the time a nollie is entered to admonish defendants that you'd better be on your good behavior for the next 13 months or you'll be back here. I've heard it many times. So in fact, there is a general understanding among people who go into criminal courts in Connecticut that the nollie is a very nice thing to have, but you really have to watch your step for the next 13 months. And indeed, it's certainly no part of the record, but in this particular case, that's exactly what Mr. Spock understood and why he didn't in fact seek out counsel until more than three years after the entry of the nollie. That's what happened. And he had good reason to feel that way for the reasons that I have pointed out. I would just say with regard to the alternate grounds for affirmance, as we all know, in a malicious prosecution case, it is not good enough that there would be probable cause merely for some charge to be brought, but specifically there has to be probable cause for the specific charge in question. And in this case, there were two such charges. And I pointed out in my brief in particular with regard to the interfering statute why, if you do redact the affidavit in support of the warrant to remove the points that were challenged by Mr. Spock's sworn testimony, you would remove probable cause at least for the interfering prosecution as to which that very broad statute has been narrowly construed by the State Supreme Court in such a way that it is very difficult to maintain a successful prosecution for interfering with an officer. In this case, I think the probable cause, or even arguable probable cause, wouldn't have been prosecuted. Thank you. Thank you. We reserve decision and we are adjourned. Court is adjourned.